Howlen V. POTTORFF, Sr., Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 12, 1996.
Decided Aug. 23, 1996.

entities with a special responsibility or duty in relation to municipal pension plans, in securing that compliance.

Howlen V. Pottorff, Sr., pro se, Petitioner.

Linda S. Lloyd, Assistant Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for Respondent.

Before McGINLEY and LEADBETTER, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Howlen V. Pottorff (Pottorff) appeals an Unemployment Compensation Board of Review (Board) order that affirmed a referee's decision denying him benefits under the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§ 751–914.

This case arises from the fact that Pottorff and other employees of ABF Freight System, Inc. (ABF) were unemployed from April 6, 1994 through April 29, 1994, during a labor dispute involving the International Brotherhood of Teamsters (Union). Pottorff and many of the employees filed for unemployment compensation for that period. Their claims were eventually denied in determinations under Section 402(d) of the Law, 43 P.S. § 802(d). Subject to a limited exception discussed below, section 402(d) disqualifies claimants whose unemployment was "due to a stoppage of work ... exist[ing] because of a labor dispute (other than a lock-out) ..." 43 P.S. § 802(d). A number of employees appealed the determinations, some doing so individually, as in Pottorff's case, and some as part of a mass appeal.[1]

---

1. The record indicates that Pottorff was actually paid four weeks of benefits during the weeks ending April 16, 1994 through May 7, 1994. When the determination in his case was subsequently issued, a nonfault overpayment was established for those benefit payments "because you were denied benefits for 4–16–94 thru 4–30–94 because of the strike [and] 5–7–94 should be your waiting week." We note that Pottorff has not mentioned the nonfault overpayment for the week ending May 7, 1994 or otherwise chal-

■ In an appeal by William Kelly, an employee of ABF and a Union member, the referee agreed that the labor dispute in question involved a work stoppage by employees, not a lockout by ABF. He also agreed that the exception to the work stoppage disqualification under section 402(d) did not apply to the employees, including probationary employees who were not yet Union members. Accordingly, the referee upheld the denial of benefits under section 402(d) for the weeks ending April 9, 1994 through April 30, 1994. He then adopted his decision in William Kelly's appeal as his decision in Pottorff's case. Pottorff appealed to the Board, which affirmed the referee's decision without making additional findings of fact. Pottorff now appeals *pro se* to this Court.[2]

■ One of Pottorff's two claims in this appeal is that the exception to the work stoppage disqualification of section 402(d) applies to him. The Law provides that unemployment due to a work stoppage will render an employee ineligible for benefits *unless*

it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

43 P.S. § 802(d). It is undisputed that Pottorff was a probationary employee and not yet a Union member at the time of the work stoppage, and thus, as the referee recognized, the second part of the foregoing exception to disqualification is satisfied.[3] Nevertheless, it is clear from the express statutory language that the first and third parts must also be satisfied for the exception to apply. *See also Kearney v. Unemployment Compensation Board of Review*, 89 Pa.Cmwlth. 404, 492 A.2d 790 (1985).

As to those elements, the referee concluded neither were satisfied. Pottorff does not direct us to law or evidence undermining the referee's conclusion that the probationary employees were directly interested in the labor dispute because the terms and conditions of their employment were covered by the labor contract being negotiated. Nor does he establish that the referee erred in concluding that the nonunion employees belonged to the same grade and class of workers as those directly interested in or participating in the dispute.[4]

Pottorff maintains that he was not interested in the dispute or at fault because he did not participate in picketing, was bound by the fact that the Union contract was controlling, could be terminated at any time and was not a Union member when the Union initiated the work stoppage. However, he does not contest the referee's finding that the relevant labor contracts contained provisions such as wage rates relating to *all* persons in the bargaining unit, including probationary and casual employees. Indeed, he acknowledges that his wages and benefits as

lenged the conclusion that "5-7-94 should be your waiting week."

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *Hercules, Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Cmwlth. 77, 604 A.2d 1159 (1992).

3. Pottorff stated in his appeal to the Board that his "union card is dated 5/9/94."

4. Pottorff, who apparently did not present evidence in his individual appeal, does not specifically cite evidence supporting his contention that

he was in a different grade or class of workers for purposes of section 402(d). Further, his argument on that third element of the exception, standing alone, could not be dispositive. Pottorff relies on *Renne v. Unemployment Compensation Board of Review*, 499 Pa. 299, 453 A.2d 318 (1982), but unlike in this case, there was no dispute there that the claimant met both the first and second requirements of the exception. Moreover, contrary to this case, the claimant's employment as a substitute teacher in *Renne* was governed by a wholly separate and distinct contract from that of permanent teachers who were on strike.

a probationary truck driver were controlled by the Union contracts. We have held:

> Some of Petitioners were members of Local 249, but even as to the few who were not, it is abundantly clear that all had a direct interest in the dispute. The record reveals that the collective bargaining agreement ... provided that the *wages and fringe benefits negotiated by the union covered all employees, including the non-member Petitioners. Thus, Petitioners had a direct interest in the dispute and are not entitled to compensation.*

*Balsamo v. Unemployment Compensation Board of Review*, 45 Pa.Cmwlth. 221, 404 A.2d 1389, 1391 (1979) (emphasis added). Similarly, we later held:

> [W]hile Claimants were not members of an organization which participated in the labor dispute they were directly interested in the dispute and they did belong to a grade or class of workers who were participating in the labor dispute. *An employee is directly interested in a labor dispute if the wages and fringe benefits negotiated by the striking union cover all employees including the non-member claimants.* Balsamo ...

*Kearney*, 492 A.2d at 792 (footnote omitted) (emphasis added).

■ The holdings in *Kearney* and *Balsamo* dictate that, because Pottorff was covered by the Union contract at the time of the employees' work stoppage, and even though he did not become a Union member until after the labor dispute, he is to be considered directly interested in the labor dispute and, therefore, not to be excepted from the section 402(d) work stoppage disqualification.

■ Pottorff's remaining contention is that his employment was terminated on April 13, 1994 and therefore he should not be denied benefits for the period of April 13, 1994 through April 30, 1994 based on the work stoppage. He has attached to his brief a letter purportedly showing he was terminated by ABF on April 13, 1994. The Board correctly states that this letter is not part of the record here, is therefore improperly included with the brief and may not now be considered. Nevertheless, the record does contain an exhibit, admitted into evidence after its introduction by ABF, including a specific and separate notation that Pottorff was terminated on April 13, 1994, which was during the work stoppage.[5] Further, in his appeals to the referee and then to the Board, Pottorff clearly and directly stated that he was terminated on April 13, 1994, and re-hired four weeks later.[6] We therefore reject the Board's present contention that Pottorff's claim was not previously raised and should be deemed waived. We conclude that the claim should have been specifically addressed by the fact-finder and, because it was not, a remand is necessary.

Accordingly, the Board's order sustaining the referee's decision is vacated insofar as it denies Pottorff benefits for the weeks ending April 16, 1994 through April 30, 1994. This case is remanded to the Board. The Board shall order the referee to hold further proceedings in Pottorff's case for the limited purpose of determining whether Pottorff is entitled to unemployment benefits during the period of April 13, 1994 through April 30, 1994 due to any termination of his employment during that time. The Board's order is affirmed in all other respects.

---

5. "Employer's Exhibit 22" lists the names of more than two hundred ABF employees who ABF claims participated in the labor dispute. Although Pottorff's name is the only one of those designated "terminated," the ramifications of a termination during the work stoppage were apparently not considered.

6. The Board points out that Pottorff mentioned only the lockout in his summary of interview. However, the summary of interview, dated April 13, 1994, may well have been prior to any notification of the alleged termination on that same date. Pottorff has maintained in three appeals since that time that he is entitled to benefits due to a termination.

### ORDER

AND NOW, this 23rd day of August, 1996, the order of the Unemployment Compensation Board of Review, No. B–346324, dated February 26, 1996, is hereby affirmed in part and vacated in part and this case is remanded for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.